TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
VALERIE L. MAKAREWICZ (CBN 229637)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0756
     Facsimile: (213) 894-6265
     E-mail: Valerie.Makarewicz@usdoj.gov
Attorneys for United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>DENNIS BLIEDEN,<br><br>　　　　　Defendant. | No. 2:19-cr-00399-AB<br><br>GOVERNMENT'S SENTENCING MEMORANDUM<br><br>Hearing:　　June 9, 2021<br>Time:　　　2:00 p.m.<br>Courtroom: 350 West 1st Street<br>　　　　　　Courtroom 7B<br>　　　　　　Los Angeles, CA |

　　　The United States of America, by and through its undersigned counsel, hereby respectfully submits a memorandum in anticipation of the sentencing of defendant Dennis Blieden, currently scheduled for June 9, 2021.

　　　As set forth more fully below, the government agrees with the United States Pretrial and Probation Officer's recommended sentence of a term of imprisonment of 102 months, three-years' supervised release, and the imposition of an order for defendant to pay

//

//

$22,669,979.07 in restitution to defendant's employer, representing the losses caused by the defendant's criminal conduct.

                                      Respectfully submitted,

                                      TRACY L. WILKISON
                                      Acting United States Attorney
                                      BRANDON D. FOX
                                      Assistant United States Attorney
                                      Chief, Criminal Division

DATED: __5/26/21_____        _/s/_____
                                      VALERIE L. MAKAREWICZ
                                      Assistant United States Attorney

**TABLE OF CONTENTS**

I.   Introduction................................................4
II.  Procedural History.........................................4
     A.   Indictment............................................4
     B.   Plea Agreement and Rule 11 Hearing....................4
     C.   PSR...................................................6
III. Consideration of Section 3553(a) Factors...................6
     A.   Nature and Circumstances of the Offenses..............7
     B.   History and Characteristics of Defendant.............11
     C.   Deterrence and Respect for the Law...................12
     D.   Protection of the Public from Further Crimes.........13
     E.   Need to Provide Educational or Vocational Training...14
     F.   Need to Avoid Unwarranted Sentencing Disparities.....14
     G.   Restitution..........................................14
IV.  Conclusion................................................15

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   Introduction**

For years, defendant worked through the ranks of his former employer, Company-1, to achieve the position of its Comptroller and Vice President of Accounting and Finance. Empowered with the trust reposed with him by his employer, defendant brazenly stole from them a staggering amount of money, over $22 million, and used that money to fuel his gambling addiction.  Defendant's actions are unconscionable and deserving of a significant sentence of incarceration of 102 months, a three-year term of supervised release, and the imposition of a restitution order of $22,669,979.07 against him.

**II.   Procedural History**

   **A.   Indictment**

On July 9, 2019, a grand jury returned an indictment against defendant that charged defendant with eleven counts of violations of 18 U.S.C. § 1343, wire fraud, and one count of a violation of 18 U.S.C. § 1028A, aggravated identity theft.  Docket No. 3.  Defendant was arrested in Las Vegas, Nevada.  PSR, ¶ 73.

   **B.   Plea Agreement and Rule 11 Hearing**

On October 6, 2019, a plea agreement was filed and on defendant November 22, 2019, defendant plead guilty.  Docket Nos. 48, 50. Defendant plead guilty to one count of a violation of 18 U.S.C. § 1343, wire fraud, and one count of a violation of 18 U.S.C. § 1028A, aggravated identity theft.  Id.

As enumerated in the plea agreement filed and accepted by the Court, defendant and the United States of America stipulated to a base offense level of seven, and a 20-level increase for loss

pursuant U.S.S.G. §§ 2B1.1(a) and (b)(1)(K), because the loss was greater than $9.5 million. Docket No. 48, p. 13. Defendant agreed to an offense level increase of two levels pursuant to U.S.S.G. § 3E1.1 because he abused his position within Company-1 to accomplish his embezzlement. Id. Defendant agreed to an additional offense level increase of two levels pursuant to U.S.S.G. § 2B1.1(b)(10)(C), because his crime involved sophisticated means. Id.

The government agreed to a two-level downward adjustment for defendant's acceptance of responsibility under U.S.S.G. §3E1.1, and agreed to move for an additional one-level downward adjustment under U.S.S.G. §3E1.1(b), if defendant met certain conditions as enumerated in the plea agreement. Id. Assuming defendant continues to accept responsibility for his actions, the computation results in a total offense level of 28, Zone D. Id.

The parties agreed not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristic, adjustments, or departures relating to the offense level be imposed. Id., p. 14. Defendant agreed that the Court must sentence him to a term of 2 years' imprisonment on Count Twelve of the Indictment (aggravated identity theft), which must run consecutively to any term of imprisonment imposed for Count One of the Indictment (wire fraud). Id., pp. 13-14.

Defendant reserved the right to argue for a more lenient sentence from the sentence suggested under the Sentencing Guidelines by arguing factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7). Id., at 14. The parties did not agree as to defendant's criminal history or criminal history category. Id.

**C. PSR**

On February 14, 2020, the United States Pretrial and Probation Office (USPPO) filed the Presentence Report (PSR) with respect to defendant, and disclosed its recommendation letter. Docket Nos. 53, 54. USPPO calculated defendant's criminal history category in Category I. PSR, p. 4. The Probation Officer did not find any factors that would warrant a departure or a variance. PSR, ¶¶ 108, 109. As such, the USPPO recommended a sentence term of 102 months, that consisted of 78 months on Count 1, and 24 months on Count 12, to be served consecutively. Docket No. 53, p. 2.

In compliance with its obligations enumerated in the plea agreement, the United States recommends the same sentence as the USPPO. Docket No. 48, p. 3.

**III. Consideration of Section 3553(a) Factors**

In determining the appropriate sentence to be imposed, this Court must also consider all sentencing considerations set forth in section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar

6

conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

A sentence of 102 months incarceration, the low-end of defendant's calculated Sentencing Guidelines range, is reasonable and just, considering the section 3553(a) factors.

**A.   Nature and Circumstances of the Offenses**

The nature and circumstances of defendant's crime are serious. 18 U.S.C. § 3553(a)(1).  Defendant's scheme to defraud Company-1 was carefully orchestrated and executed and sophisticated in nature.

Defendant used a intricate method and structuring his embezzlement through multiple transfers, thus, making it difficult for anyone to uncover his stealing.  Defendant fraudulently wired money from Company-1's main operating account with Wells Fargo, through its Western Union business account, to its account with Silicon Valley Bank, and then, into one of his six personal accounts with multiple banks. PSR, ¶ 17; Docket No. 48, p. 9. In furtherance of his crimes, time and time again, defendant made fraudulent entries in Company-1's accounting software, SAP, account records, falsely representing that the wire transfers were authorized payments of money due to the company's clients on the dates and in the amounts indicated in the SAP accounting records made by defendant. PSR, ¶ 17; Docket No. 48, p. 10. Those payments were never made to Company-1's clients until defendant's crime was uncovered (if at all), a breach of trust and obligation not only to Company-1 as its Comptroller and a Vice President.  Defendant also breached the trust and obligations owed to the young and perhaps unsophisticated YouTube, Instagram, and other social media influencers and creators, who earned money through their work on said platforms, that were needed to support their

families. Docket Nos. 48, p. 8; 79, p. 2.  Those clients relied upon defendant to do his job, when instead, he stole millions from them. He lied to his co-workers when he emailed that he had paid the clients, when he had not.  Docket Nos. 48, pp. 8-9, 11; 79, p. 2. After the stolen funds were transferred into one of his personal bank accounts, defendant used the money to either pay personal expenses, including people to whom he owed money from gambling, or to fund his crypto-currency account, all methods undertaken to avoid any detection or raise any suspicion.  Docket No. 48, p. 10.

In another part of his scheme, he falsely represented on the user activity records for Company-1's SVB bank account that the massive transfers from Company-1's SVB account to defendant's Chase account were "equity" draws owed to him by the company. Id. In fact, defendant never made any capital contributions but again, tricked anyone who would review the statements to cover his crimes.

Defendant created false documents and forge signatures on these documents of his superior and owner of Company-1, S.H., to hide his transfers, and quell any inquiry as to the business purposes (or lack thereof) of the money, $230,000. Id. Defendant faked a lease agreement for the rental of a condo in Mexico, and Western Union wire transfer letters. Id., p. 11.  Defendant abused his status as Comptroller and Vice President to provide legitimacy to statements and emails that assured Company-1's executives, employees, clients, outside vendors, and financial institutions that he was honestly performing his job duties, when for years, the opposite was true.

Defendant's scheme was not an accident; it was deliberate and brazen, or as S.H. phrased it, "calculated and deliberate." Docket No. 79, p. 2.  His scheme financially devastated Company-1. PSR, ¶

22. More than 60 employees of Company-1 have lost their jobs – Company-1 ceased to exist because of defendant's stealing. PSR, ¶ 22e. Through no fault of their own, the 60 individuals were abruptly forced to find other work to support themselves and their families, all due to defendant's uncontrolled greed and addiction.

The people who created and worked for and with Company-1 also experienced a grave loss. The Chief Financial Officer, defendant's supervisor, who discovered defendant's crimes, discussed the personal impact of defendant's actions upon her. PSR, ¶ 22. This person suffers from very real and lasting health concerns because of defendant. Id. This victim worked long and difficult hours unwinding defendant's scheme, when in the end, this person also lost her job when Company-1 collapsed. Id. Company-1's finance team spent two years internally investigating defendant's crimes after they were uncovered -- the very people that defendant worked closely with confronted this crime on a daily basis, until all of defendant's fraud was uncovered. PSR, ¶ 22; Docket No. 79, p. 2.

The CEO of Company-1 vividly described the pain and destruction defendant caused upon herself and the other employees who comprised Company-1, who simply came to work each day to earn an honest living. Docket No. 79, p. 2. The CEO lost the company she created and developed for eight years. Id. All the while, defendant worked alongside Company-1's employees with whom he socialized and who likely believed he was their friend. The same people who supported and developed his career at Company-1, provided him limitless opportunities, and professional growth. Id. The personal betrayal and loss of 60 individuals' work adequately support a sentence of 102 months.

Defendant's actions upon discovery of his crimes are mitigating factors. Defendant accepted responsibility, pleaded guilty, voluntarily entered in-patient rehabilitation for a substantial amount of time, and met with counsel for Company-1 on several occasions to assist its internal investigation. For these reasons, the government agrees that the three-level reduction for acceptance of responsibility is appropriate. The government notes that defendant will likely explain his meetings with Company-1's counsel in greater detail, but regardless, defendant's cooperation is part of the acceptance of responsibility for his actions, nothing more. Part of defendant's qualification for the three-level reduction under U.S.S.G. § 3E1.1 is his voluntary assistance in recovery of the fruits and instrumentalities of the offense. U.S.S.G. § 3E1.1, Application Note 1. Also, defendant's post-offense conduct in seeking addiction treatment does not warrant a variance from the recommended Sentencing Guidelines range. Again, post-offense rehabilitative efforts, while admirable, is part of defendant's acceptance of responsibility and the appropriate three-level reduction.

Overall, the Sentencing Guidelines account for the seriousness of defendant's conduct, that include the staggering amount of monetary losses, defendant's use of sophisticated means, the devastating effects on Company-1 and its human victims, and defendant's repeated abuse of his position of trust. The government submits that the low-end of the Sentencing Guideline range appropriately balances the brazenness of defendant's conduct with the mitigating factors of his acceptance of responsibility.

**B. History and Characteristics of Defendant**

Section 3553(a)(1) also instructs the Court to consider a defendant's characteristics in fashioning a reasonable sentence. In this case, defendant's history and characteristics support a Guidelines range sentence.

From defendant's own account, defendant reported having a privileged childhood, living with both parents in an "upper-middle-class" neighborhood. PSR, ¶¶ 57, 59. Defendant received a solid secondary and post-secondary education, a benefit not available to many. PSR, ¶¶ 80-82. After receiving his college degree, defendant quickly found jobs in his chosen field in a new city, Los Angeles, until he found work with Company-1 in September 2013. PSR, ¶¶ 84-86. Shortly after joining Company-1, executives within Company-1 found defendant's financial skills and judgment to be valuable, and in turn, promoted him to Controller and Vice President of Accounting and Finance, and paid him a more-than-adequate salary of $140,000, plus bonuses. PSR, ¶¶ 13, 84.

Defendant's addiction, whether to gambling or substances, is not disputed by the government. The government does not question that defendant has an addiction, one that arose early in his life. PSR, ¶ 60. However, even at a young age, defendant received multiple treatments and opportunities to address his addiction. Even in his interview with USPPO, defendant failed to admit the full extent of his addiction when he did not disclose his alcohol and marijuana use, and subsequent court ordered treatment he received. Rather, it was defendant's father who disclosed defendant's participation in court ordered outpatient treatment for marijuana use and drinking when defendant was 16- and 17-years-old. PSR, ¶ 79. Again, at the age of

11

22, perhaps encouraged by skills learned at the court mandated addiction treatment, defendant admitted to his parents that he had a gambling addiction. PSR, ¶ 74.  Defendant received treatment at UCLA through an outpatient treatment program in approximately 2011, aided with his parents' support. Id.

However, despite the three experiences with addiction treatment, and the steady support of his parents, defendant ignored his past addiction, when he rose to a position within Company-1 that gave him unfettered access to its money.  Instead of being honest, asking for assistance, and putting in the undisputed difficult and hard work done in addiction treatment programs, defendant sadly relapsed in an astonishing fashion.  Armed with skills learned in the treatment he received thrice before, and ample opportunities and people to assist him, defendant took an easier route, and thus began his years' long pattern of lying to his employer about his prior gambling history. Defendant failed to advise his company that unchecked access to large sums of money would not be wise (or healthy for him), abused the trust his employer had given him, lied to those he reported to, supervised, and his fellow co-workers, used their identities to cover his crimes and then, time after time, in sums as large as $230,000 at a time, stole from his company to feed into this long-standing addiction.

These are the facts demonstrate defendant's true character.

### C.   Deterrence and Respect for the Law

A 102-month Guidelines sentence adequately addresses the need for the sentence imposed "to promote respect for the law," as well as "the need to afford adequate deterrence to criminal conduct." Defendant's sentence must provide adequate deterrence to criminal

conduct, both to deter the defendant from committing future crimes, and deter others who made by disposed to commit similar offenses.

As addressed above, defendant was very aware of his addiction, yet, failed to disclose it to his employer when it presented him with a job that would trigger this addiction. As such, defendant's history and characteristics, as well as the nature and circumstances of his crimes, demonstrate that defendant poses a significant recidivism risk. Defendant's crime was not one of opportunity or a one-time mistake. His scheme spanned years and required active and deliberate measures to defraud Company-1 for his own benefit. Also noted by the USPPO, a significant sentence <u>may</u> deter defendant from future criminal conduct. Disclosed Letter, p. 5 [emphasis added]. The recommended three-year term of supervised release will ensure defendant is closely monitored upon release into the community. <u>Id</u>., p. 6.

In addition, a significant sentence is necessary to deter other similarly situated individuals. As this Court is aware, fraud runs rampant through this district and, unfortunately, recent tragedy, like the COVID-19 pandemic, has only created more opportunities for fraud. Many are interested in the outcome of this case, which has generated substantial press. A significant sentence is needed to deter defendant and others who contemplate executing similar fraudulent schemes.

**D. Protection of the Public from Further Crimes**

As noted in the Disclosed Letter, USPPO highlighted that defendant continues to pose a significant threat to the community at large. Disclosed Letter, p. 5. The recommended sentence of 102

months will serve to protect the community during defendant's incarceration. The government wholly agrees with USPPO.

### E. Need to Provide Educational or Vocational Training

The need to provide defendant with any educational or vocational training, medical care, or other correctional treatment may be a minor factor in this case. While defendant is educated in finance accounting, upon release, defendant may not able to resume or find work in that area, so further education or different vocation may be needed.

### F. Need to Avoid Unwarranted Sentencing Disparities

A within-Guidelines sentence of 102 months of imprisonment would ensure that defendant does not receive a sentence below or above what other similarly situated defendants would receive. For example, very recently, in a case bearing striking similarities to the instant one, Hon. John A. Kronstadt sentenced a defendant who embezzled $36 million from his employer to a within-Guidelines sentence of 126 months. United States v. Paul McDaniel, Case No. 2:17-cr-00570-JAK, Docket No. 116 (C.D.C.A., April 9, 2021)[1].

### G. Restitution

Restitution is mandatory pursuant to the Mandatory Victims Recovery Act ("MVRA"). 18 U.S.C. § 3663A. Defendant has agreed that the loss incurred through his scheme to defraud is $22,669,979.07. Docket No. 48, p. 11. As such, the Court should enter a restitution order against defendant in favor of Company-1 in that amount.

---

[1] Defendant McDaniel plead guilty to one violation of wire fraud and was a criminal history category III, unlike defendant herein, who also plead to aggravated identity theft that requires the Court to sentence defendant to a 24-month sentence to run concurrently with any sentence the Court may impose for the wire fraud count and is Criminal History Category I.

**IV. Conclusion**

As a victim told this Court, defendant caused severe "pain and destruction" to many people and "destroyed lives" when he meticulously, deceptively, and callously stole over $22 million from Company-1. Defendant caused tremendous and long-lasting tangible and intangible damage and hardship to Company-1, its parent company, and to its employees. Defendant made deliberate and criminal choices to take advantage of the responsibility he earned for personal profit at the expense of his employer. Defendant engaged in a fraud that lasted many years and caused significant harm.

For the reasons set forth above, the government respectfully requests that the Court find that defendant's total offense level is 28 and sentence him to 102 months, the low-end of the applicable advisory Sentencing Guideline range. The government submits that this sentence is sufficient, but not more than necessary to achieve the goals of sentencing and appropriately reflects the aggravating factors in this case. To the extent there are any mitigating factors, those are recognized by imposing a low-end sentence. The Court should further order the defendant to pay restitution in the total amount of $22,669,979.07 to Company-1.

There is little doubt that defendant's significant criminal conduct warrants an equally significant prison sentence. There are no other section 3553(a) factors in this case which weigh against imposition of such a sentence upon defendant; to the contrary, the section 3553(a) factors on balance support the imposition of the recommended Guideline punishment.